# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANTONIO OSUNA CARO, | Hon. Faith S. Hochberg, U.S.D.J. |
| Petitioner, | Civil Case No. 13-3425 (FSH) |
|  | **OPINION & ORDER** |
| BERUZKA MESA SANCHEZ, | Date: September 17, 2013 |
| Respondent. |  |

**HOCHBERG, District Judge:**

This case comes before the Court upon the Petition for Return of a Child to Spain under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 ("Hague Convention"). The Court decides this Petition on the papers in accordance with Federal Rule of Civil Procedure 78.

I. BACKGROUND

   *a. Facts*

Petitioner Antonio Osuna Caro and Respondent Beruzka Mesa Sanchez were married in 2007 in Sevilla, Spain. Their daughter ("the Child") was born in 2008. Both parents are still married, although they are engaged in contested custody proceedings. They share custody of the Child under Spanish law. The family lived together in Sevilla until the fall of 2011. Two years ago, on September 30, 2011, Ms. Sanchez and the Child traveled to New Jersey and have resided there since that date. The Petitioner and Respondent agreed upon that travel to New Jersey, but

1

now dispute whether that travel was intended to be a temporary trip or the beginning of a relocation from Spain to the United States.

Petitioner Caro's Version

Caro alleges that the purpose of the trip was to allow Sanchez a short-term visit with her seriously ill mother. Caro states that he believed Sanchez and the Child would return to Spain in October 2011, but that the return date was extended by his wife because her mother was still ill. Mr. Caro traveled to New Jersey in 2011 for the Christmas holidays. He believed that Sanchez's mother was not seriously ill at that time and avers that he demanded that Sanchez and the Child return to Spain, but that Sanchez refused. He avers that in February 2012, he contacted "the Minors Prosecuting Office in Sevilla, attorney's offices and International organizations for children who have been abducted or kept illegally." [Dkt No. 1 ¶ 14]. However, he took no legal action. He again traveled to New Jersey in June 2012 in an attempt to resolve the issue of custody. At that time, Caro avers that Sanchez again refused to return to Spain and stated that she and the Child were going to reside permanently in New Jersey.

On September 17, 2012, Caro filed an Application for Return of the Child with the Ministry of Justice in Spain, which triggered the U.S. State Department to send a Voluntary Return Letter dated November 29, 2012 to Sanchez, asking her to "consider voluntarily agreeing to return the child to Spain in order to avoid the applicant's initiation of legal proceedings in the United States under the Hague Convention." Sanchez allegedly did not respond. This Petition for Return of the Child to Spain was filed on May 31, 2013.

Respondent Sanchez's Version

Sanchez's version of the events differs dramatically and she submitted undisputedly authentic documents to support her factual averrals. Ms. Sanchez avers that she and her husband

2

jointly decided to move to the United States with the Child. Acting on that plan, in May 2011, Mr. Caro filed an application seeking authorization to travel to the United States under the Visa Extension Program, which would enable him to stay for an extended duration in this country. In September 2011, Sanchez and the Child traveled to New Jersey as "the initial step of relocation for the family." [Dkt No. 20 ¶ 9]. The family began investigating the possibility of purchasing a house in New Jersey. This fact is supported by a letter from the Realtor with whom they both met to search for a home to buy, as well as financial documents submitted by Caro to be used to qualify for a mortgage to buy real estate in New Jersey. When Caro visited New Jersey in December 2011, he brought along the family dog to live here. Ms. Sanchez avers that while her husband was in the United States on that trip, they jointly continued their search for a house. In mid-2012, Sanchez became employed in New Jersey, rented an apartment with her mother, and enrolled the Child in a Head Start Program. In December 2012, Sanchez received the Voluntary Return Letter from the U.S. State Department. When Sanchez asked Caro about the letter, he said he had requested the letter so as not to lose custody of the Child. In January 2013, Caro again visited Sanchez and the Child in New Jersey.

Sanchez filed a complaint for custody and child support in New Jersey Superior Court on February 1, 2013. On April 27, 2013, Caro sent Sanchez a letter describing his frustration in his job search for a foreign position (he is a Spanish attorney) saying:

> . . . I don't have good news. I've finally been able to speak to someone in charge of the Ministry of Foreign Affairs. They are not going to give me, not even one of the posts/jobs I've applied for at the Embassies and Consulates. The reason is a technical problem that makes no sense explaining it now. There are still other possibilities; but they are more remote. I have to make some contacts with other organizations. I am not going to give up. I will find some alternative. But it is true that the plan for us to go live in another country seems that it will not be possible at this time.

[Dkt. No. 20 Ex. I]. One month later, Caro filed the instant Petition, claiming that his Child had been abducted. Sanchez states that Caro filed this Petition because he realized he would not be able to easily find employment and join the family in the United States. He did, however, in the letter a mere month before claiming child abduction, state that he was continuing to persevere in that job search.

### b. Procedural History

Caro filed the Petition for Return of the Child on May 31, 2013. He disclosed almost none of the above facts. He initially sought, and was granted temporary restraints based upon his ex parte submissions. However, those were vacated after Caro failed to effect timely service of the Petition in accordance with the Court's Order. Based upon the scanty facts submitted by Caro, the Court scheduled an early hearing in July 2013. However, Caro's attorney did not wish to alter vacation plans to attend and Caro did not wish to have to come from Spain to attend it. The Court then laid out a briefing schedule. Sanchez responded with a cross-motion to transfer this case to New Jersey Superior Court, where the petition for custody and child support had already been pending for four months, and also argued that there has been no wrongful removal or retention in this case. After receiving the parties' briefs, the Court issued an order requiring additional information.

## II. DISCUSSION

### a. The Hague Convention on International Child Abduction

The purpose of the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention." Hague Convention pmb. The Convention is not designed to settle international child custody disputes. Instead, it is intended to prevent international forum shopping in such disputes, and restore the status quo prior to the

4

wrongful removal or retention. *Baxter v. Baxter*, 423 F.3d 363, 367 (3d Cir. 2005). Under the Convention, the removal or retention of a child is wrongful where:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. 3. If there has been a wrongful removal or retention, and at the time of the commencement of the proceedings to return the child, "a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith." *Id.*, art. 12. If more than a year has passed, the deciding authority must still order the return of the child "unless it is demonstrated that the child is now settled in its new environment." *Id.* Under Article 13 of the Convention, a child also need not be returned (regardless of how much time has elapsed since the removal or retention) if the petitioner consented to the retention or removal, there is a grave risk that returning the child would expose him or her to "physical or psychological harm or otherwise place the child in an intolerable situation," or the child objects to being returned and is old enough that "it is appropriate to take account of its views."

The petitioner bears the burden of proving that the removal or retention was wrongful by a preponderance of the evidence. 42 U.S.C. § 11603(e)(1)(A). The respondent bears the burden of proving that there is a grave risk of harm by clear and convincing evidence, and the other defenses discussed above by a preponderance of the evidence. 42 U.S.C. § 11603(e)(2).

### b. *The Alleged Wrongful Retention*

The Petition by Mr. Caro in this case alleges that Ms. Sanchez wrongfully retained the Child in New Jersey. Sanchez does not contest that Caro has custody rights over the child, and

5

that he has continued to exercise those rights. It is Caro's burden to show that the retention was "wrongful."

In this case, Caro claims that the child was wrongfully retained in New Jersey after a trip from Spain to New Jersey to visit her mother which Caro claims was intended to be of short duration, while Sanchez has submitted contemporaneous unrefuted documentation showing that the shared intention of the parties when she and the Child left Spain was to establish a new family residence in the United States. Even the family dog relocated here. The intent of the parents of this three-year old is most relevant to this inquiry. *Whiting v. Krassner*, 391 F.3d 540, 550 (3d Cir. 2004).

Caro applied for a long-term visa to the United States in May 2011, about four months before Sanchez traveled with the Child to the U.S. [Dkt. No. 20 Ex. A]. A real estate agent provided a letter that both Sanchez and Caro inquired about purchasing a property in Morris County, N.J., and that Caro himself visited the real estate office to ask questions about how to qualify for a mortgage. [Dkt. No. 28 Ex. A]. He then sent the agent financial documents to qualify for a mortgage. [Dkt. No. 20 Ex. B]. Caro moved the family dog to the United States in December 2011. [Dkt. No. 28 ¶ 13, Ex. C]. In total, Caro visited Sanchez and the Child in New Jersey in December 2011, June 2012, and January 2013 and periodically sent them money to their home in New Jersey. The April 2013 letter from Caro to Sanchez says nothing about abduction, nor flight, nor argument about anything his wife had done. Instead, he spoke of his love for her and the fact that he had been trying to get work in the Spanish consulate or embassy in the United States so that he could join her in New Jersey. The letter, written a mere thirty days before this petition was filed, reveals no discord between husband and wife about her presence with the child in New Jersey. Instead, it reveals the Petitioner's loneliness waiting in

6

Spain to get a job abroad so that he could join her.  In this letter, he tells her that he does not "have good news."  His applications for a job outside of Spain had been rejected, but he would still continue in that quest for foreign employment.

Not once does the letter say that she had overstayed their agreed intentions for her travel to the United States.  Rather, the letter unequivocally reveals that he is having difficulty carrying out the plan because he cannot find a suitable position in a diplomatic post here.   At most, one could infer that he might want to change their agreement to relocate to the United States, although he does not say so.

Caro's Petition never told this Court the facts and intentions revealed in his extended Visa Application; his relocation of the family dog to be with his wife and child in New Jersey; his search for a home in New Jersey; his submission of financial documents to qualify for a New Jersey mortgage; and his job search here.

In light of the documentary evidence presented by Sanchez, Caro's sworn statement that he did not intend for the Child to move to the United States is not credible.  Rather, the Court finds that at the time the Child traveled to the United States in the fall of 2011, both of her parents intended that she move to the United States. [1]  Caro and Sanchez jointly searched for a house and relocated the family dog to New Jersey.  Caro's affidavit to the contrary is belied by his own heartsick letter, in which he acknowledges the family's plan to relocate away from Spain.  There has been no wrongful retention.  As of September 30, 2011, the Child's habitual

---

[1]  If the Court had not reached this conclusion, it would be strongly inclined to rule, as a second and independent basis for this ruling, that the date of alleged wrongful retention was more than a year before the filing of the instant Petition, and that the Child is now well settled in the United States.

7

residence has been in the United States.[2] Caro cannot unilaterally change the agreement for the Child to move to this country because he is unsatisfied with his job search and wishes to alter the joint plan to relocate here. Once the Court reviewed the papers, in light of Caro's inability to proffer any genuine evidence to meet his burden to prove wrongful retention, it became clear that there was no need for an oral evidentiary hearing to supplement the documentary evidentiary hearing that the Court conducted.

     *c. The Cross-Motion to Transfer the Case*

Sanchez has brought a cross-motion requesting that the Court transfer this case to New Jersey Superior Court, where Sanchez's suit for custody and child support is pending. Because the Court has denied the Petition, the motion is moot.[3]

## III. CONCLUSION AND ORDER

For the reasons stated above,

     **IT IS** on this 17th day of September, 2013,

     **ORDERED** that the Petition For Return of the Child to Spain is **DENIED**, and it is further

     **ORDERED** that the Cross-Motion to Transfer this Case is **DENIED** as moot, and it is further

     **ORDERED** that the Clerk of the Court is to **CLOSE** this case.

---

[2] A child's past habitual residence can be abandoned "by the shared intent of the parents for her to acquire a new habitual residence." *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 272 (3d Cir. 2007).

[3] However, Caro may well have had a duty in the pre-existing New Jersey Superior Court case to bring the Hague Convention Petition in that case under the Entire Controversy Doctrine because the state has concurrent jurisdiction. At this time, there is no need for this Court to decide this question.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.